## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

)
)
CAITLIN AMERAL, KARIN AMERAL )
and WILLIAM AMERAL, )
          Plaintiffs, )
)
v. )
)    **Civil Action No. 14-14127-DJC**
)
INTREPID TRAVEL PARTY, LTD., )
INTREPID US, INC. and PEAK TRAVEL )
ADVENTURE GROUP LIMITED, )
         Defendants. )
)
)
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                         **September 3, 2015**

## I.     Introduction

Plaintiff Caitlin Ameral ("Plaintiff") and her parents Karin and William Ameral (collectively, "Plaintiffs") have filed this lawsuit against Defendants Intrepid Travel Party, Ltd. ("ITPL"), Intrepid US, Inc. ("Intrepid US") and Peak Travel Adventure Group, Ltd. ("Peak") (collectively, "Defendants") for claims arising out of injuries Plaintiff sustained while traveling on an ITPL trip in South Africa.  Plaintiff asserts claims of breach of contract against ITPL (Count I), negligence against Intrepid US (Count II), negligence against ITPL (Count III), *respondeat superior* against ITPL (Count IV), negligence against Peak (Count V) and *respondeat superior* against Peak (Count VI). D. 1-1.  Plaintiff's parents assert claims for loss of filial consortium against all Defendants (Counts VII and VIII). D. 1.  Defendants have moved to dismiss Plaintiffs' claims for lack of personal jurisdiction and for failure to state a claim upon

1

which relief can be granted.  D. 12, D. 14, D. 16.  For the reasons stated below, the Court

ALLOWS the motions to dismiss as to all Defendants.

## II.      Standard of Review

To meet their burden of establishing that the Court has personal jurisdiction over

Defendants pursuant to Fed. R. Civ. P. 12(b)(2), Plaintiffs must "demonstrate the existence of

every fact required to satisfy both the forum's long arm statute and the Due Process Clause of the

Constitution."   United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001)

(citation and quotations omitted).  The Court considers the facts alleged in the pleadings as well

as the parties' supplemental filings.  Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995).  The

Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not

disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."

Mass. Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  The Court will then "add

to the mix facts put forward by the defendants, to the extent that they are uncontradicted."  Id.

In the First Circuit, a motion to dismiss on the basis of a forum-selection clause is

analyzed as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  See Rivera v. Centro Médico de

Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009).  In considering a motion to dismiss under Fed. R.

Civ. P. 12(b)(6), the Court will dismiss a complaint that fails to plead "enough facts to state a

claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007).  To state a plausible claim, a complaint need not contain detailed factual allegations, but

it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on

the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

Twombly, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original).  At bottom, a claim must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The evaluation of the sufficiency of a complaint is a two-step process. Cardigan Mountain School v. New Hampshire Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015). First, the Court must "distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  The Court then must "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

## III.    Factual Background

On August 22, 2013, Plaintiff, a resident of Cambridge, Massachusetts, logged on to a website maintained by ITPL.  D. 1-1 ¶¶ 1, 27–30.  ITPL is a tour operator organized under the laws of Australia with its principal place of business in Melbourne, Australia. Id. ¶ 7.  ITPL's website contained information and prices for ITPL's global travel packages and featured an interactive platform for customers to identify their location and select packages. Id. ¶¶ 21–24. Plaintiff selected an itinerary that started in Johannesburg, South Africa and included a tour of Kruger National Park. Id. ¶ 29.  Plaintiff then called the telephone number provided on the website and spoke with a representative of Intrepid US, a Delaware corporation based in California that serves as ITPL's booking agent. Id. ¶¶ 10, 30-33, 36.  Plaintiff provided Intrepid US with her credit card information and Intrepid US booked Plaintiff's trip order over the telephone through its California office. Id. ¶ 33.  Later that day, ITPL sent Plaintiff an email

through Intrepid US confirming the dates and cost of her trip.  Id. ¶ 41.  The email contained a copy of the "Booking Conditions" governing the trip and an itinerary.  Id.

Plaintiff traveled from Boston, Massachusetts to Johannesburg, South Africa on December 27, 2013.  Id. ¶ 51.  On December 29, 2013, Plaintiff was riding on an ITPL tour bus to Kruger National Park.  Id. ¶ 54.  The driver lost control of the bus, and the bus slid across the highway and landed in a ravine.  Id. ¶¶ 69, 73.  Plaintiff suffered severe and permanent injuries as a result of the collision.  Id. ¶¶ 74-78.

## IV.    Procedural History

Plaintiffs instituted this action in Middlesex Superior Court on October 2, 2014.  D. 1 at 1; D. 1-1 at 21.  Defendants removed the case to this Court on November 10, 2014.  D. 1.  Defendants moved to dismiss on December 19, 2014.  D. 12, D. 14, D. 16.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 37.

## V.    Discussion

### A.    Personal Jurisdiction

There are two types of personal jurisdiction:  general and specific.  Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010).  Specific jurisdiction may be asserted when "a suit arises directly out of [defendant's] forum-based activities," while general jurisdiction "may be asserted in connection with suits not directly founded on [defendant's] forum-based conduct." Donatelli v. Nat'l Hockey League, 893 F.2d 459, 462-63 (1st Cir. 1990).  The due process clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).  A court may not assert jurisdiction unless "the defendant's conduct and connection

with the forum State are such that he should reasonably anticipate being haled into court there."
World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

      *1.*    *ITPL*

      a)    <u>Jurisdictional Allegations</u>

The Court must first determine which contacts should be imputed to ITPL for purposes of assessing personal jurisdiction. Plaintiffs allege that ITPL solicited business in Massachusetts through its maintenance of an interactive website accessible in Massachusetts, D. 1-1 ¶¶ 20-27, and through the email ITPL sent to confirm the trip, id. ¶ 41. Plaintiffs argue that the Court should also impute Intrepid US's jurisdictional contacts to ITPL because Intrepid US is an agent of ITPL. D. 24 at 7-8. ITPL argues that Intrepid US was ITPL's booking agent, but not technically an agent "in the traditional legal sense." D. 30 at 1.

"For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55 (1st Cir. 2002). An agency relationship for purposes of personal jurisdiction is determined with reference to "[t]raditional common law concepts." Id. at 56. The "essential question . . . is whether the relationship between [the defendants], however it is labeled, is sufficient to attribute [one defendant's] in-state contacts with the [the other defendant] to exercise jurisdiction that comports with due process." Weinberg v. Grand Circle Travel, LCC, 891 F. Supp. 2d 228, 240 (D. Mass. 2012). "In answering this question, the Court must determine: (1) whether the [alleged agents] were in an actual or apparent agency relationship with [the alleged principal] and (2) whether the [alleged principal] ratified [the alleged agents'] conduct. Id. at 240-41 (citing Daynard, 290 F.3d at 53-54).

At a minimum, ITPL and Intrepid US were engaged in an apparent agency relationship and ITPL ratified Intrepid US's conduct such that the Court may consider their combined contacts for purposes of specific jurisdiction over ITPL.  The apparent agency analysis considers whether conduct "leads a third party to believe that the agent has authority and thus creates apparent authority to those persons who act upon it."  Daynard, 290 F.3d at 56 (quoting H.G. Reuschlein & W.A. Gregory, The Law of Agency and Partnership § 25, at 65–66 (2d ed. 1990)). ITPL, through its website, prompted Plaintiff to contact a telephone number that connected her to Intrepid US to pay for her ITPL trip and Intrepid US accepted payment from Plaintiff on behalf of ITPL.  This conduct by both ITPL and Intrepid US reasonably led Plaintiff to believe she was interacting with Intrepid US as an agent of ITPL and therefore vested Intrepid US with apparent authority to act on ITPL's behalf.  Furthermore, ITPL expressly ratified Intrepid US's conduct by confirming Plaintiff's purchase of the trip via email.  Id. ¶ 41.  The Court will therefore consider the combined contacts of ITPL and Intrepid US in assessing personal jurisdiction over ITPL.

Defendants cite Weinberg, 891 F. Supp. 2d at 228 and Heidle v. Prospect Reef Resort, Ltd., 364 F. Supp. 2d 312 (W.D.N.Y. 2005), but these cases are inapposite.  In Weinberg, the district court refused to attribute the contacts of a Massachusetts-based travel agent to two African tour operators that ran a hot air balloon excursion on which plaintiffs were injured where the tour operators had no contact with Massachusetts and the travel agent booked the tour through a third-party agency.  Weinberg, 891 F. Supp. 2d at 241-43.  The court considered that there was no overt conduct by the tour operators to suggest that they were principals of the travel agent and no contact between the tour operators and plaintiffs.  Id. at 243-44.  In the present case, however, ITPL's website directed Plaintiff to contact Intrepid US and ITPL ratified Intrepid US's conduct through the confirmation email.  Heidle is also distinguishable, as the district court

applied New York law, and the alleged agent in question was an independent contractor who worked for many different travel providers and lacked the authority to bind the alleged principal, Heidle, 364 F. Supp. 2d at 314-16, whereas Intrepid US is a wholly-owned subsidiary of ITPL employed specifically to serve as a booking agent for ITPL in the United States. The Court will therefore impute Intrepid US's jurisdictional contacts to ITPL due to their apparent agency relationship.

b)    <u>General Jurisdiction</u>

General jurisdiction exists when the defendant has engaged "in the 'continuous and systematic' pursuit of general business activities in the forum state," even if the activity is unrelated to the cause of action. <u>Glater v. Eli Lilly & Co.</u>, 744 F.2d 213, 216 (1st Cir. 1984) (quoting <u>Perkins v. Benguet Consolidated Mining Co.</u>, 342 U.S. 437, 448 (1952)). The "due process clause . . . impose[s] three requirements on the exercise of general jurisdiction over out-of-state defendants," namely: "(1) the defendant must have sufficient contacts with the forum state, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the circumstances." <u>Cossaboon</u>, 600 F.3d at 32.

Based on Plaintiffs' allegations and the affidavit of ITPL's deputy managing director, D. 13-1, the Court finds ITPL's contacts with Massachusetts insufficient to support the exercise of general jurisdiction. ITPL has never maintained an office or other facility in Massachusetts, has never registered to transact business in Massachusetts and has never maintained a mailing address, post office box or telephone number in Massachusetts. D. 13-1 ¶ 8. ITPL has never owned or leased any real property in Massachusetts, maintained a bank account in Massachusetts or paid taxes or filed tax returns in Massachusetts. <u>Id.</u> ¶ 9. ITPL has never had employees who

7

work or live in Massachusetts.  Id. ¶ 10.  ITPL does not specifically direct advertising at the Massachusetts market.  Id. ¶ 11.

Adding Intrepid US's contacts does not change the general jurisdiction analysis.  Like ITPL, Intrepid US has never maintained an office or facility in Massachusetts. D. 15-1 ¶ 6. Intrepid US has never registered to transact business in Massachusetts or maintained a mailing address, post office box or telephone number in Massachusetts.  Id.  Intrepid US has never owned or leased any real property in Massachusetts, maintained a bank account in Massachusetts or paid taxes or filed tax returns in Massachusetts.  Id. A ¶ 7.  Intrepid US has never had employees who work or live in Massachusetts.  Id. ¶ 8.  Intrepid US does not advertise in periodicals or media specifically directed at the residents of Massachusetts.  Id.  ¶ 9.  Intrepid US conducts national advertising of Intrepid-branded trips, but it does not target the Massachusetts market, id., and "even extensive advertising contacts with the forum state [are] inadequate to permit an assertion of general jurisdiction."  Cossaboon, 600 F.3d at 34.

Plaintiffs note that their ability to establish general jurisdiction would require discovery and ask for an opportunity to conduct limited jurisdictional discovery.  D. 24 at 7, n.4.  This request is denied, as Plaintiffs have failed to make a colorable claim of general jurisdiction over ITPL.  Am. Med. Sys., Inc. v. Biolitec, Inc., 604 F. Supp. 2d 325, 330 (D. Mass. 2009) (holding that "Plaintiffs' inability to make even a colorable claim of personal jurisdiction over [Defendant] warrants rejection of their request for jurisdictional discovery").

c)      Specific Jurisdiction

The Massachusetts long-arm statute, Mass. Gen. L. c. 223A, § 3, provides for specific jurisdiction to the extent provided by the Constitution.  Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. 2011).  "The First Circuit employs a tripartite analysis to determine whether specific

jurisdiction is appropriate:  1) whether the claims arise out of or are related to the defendant's in-state activities, 2) whether the defendant has purposefully availed itself of the laws of the forum state and 3) whether the exercise of jurisdiction is reasonable under the circumstances." Pesmel N. Am., LLC v. Caraustar Indus., Inc., 754 F. Supp. 2d 168, 172 (D. Mass. 2010) (citations omitted).  The plaintiff bears the burden on all three elements.  See Rodriguez v. Samsung Electronics Co., 827 F. Supp. 2d 47, 50 (D. Mass. 2011).

(1)     Relatedness

Relatedness, the first requirement of specific jurisdiction, "turns on causation and focuses on the nexus between a plaintiff's injury and a defendant's actions."  Metcalf v. Bay Ferries Ltd., 937 F. Supp. 2d 147, 153 (D. Mass. 2013).  The relatedness prong requires the plaintiff to show "a demonstrable nexus between [its] claims and [the defendant's] forum-based activities, such . . . [that] the litigation itself is founded directly on those activities."  Adelson, 652 F.3d at 81. "There must be more than just an attenuated connection between the contacts and the claim." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008).  "[T]he defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case."  Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) (quoting Marino v. Hyatt Corp., 793 F.2d 427, 430 (1st Cir. 1986)).  The relatedness test is a "flexible, relaxed standard."  Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994).

Plaintiff's in-state contacts with ITPL and Intrepid US form an important part of the breach of contract and negligence claims against ITPL such that the relatedness requirement is satisfied here.  The complaint alleges that Plaintiff accessed ITPL's website in Massachusetts, contacted Intrepid US from Massachusetts at the direction of the website to pay for her trip and received an email in Massachusetts from ITPL that confirmed the trip dates, an itinerary and a

copy of the booking conditions.  D. 1-1 ¶¶ 26, 30-31, 41.  For a breach of contract claim, the Court asks whether the defendant's contacts with the forum state were "instrumental either in the formation of the contract or its breach."  Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999).  The formation of the contract while Plaintiff was in Massachusetts serves as a material element in her breach of contract claim against ITPL.  In a tort case, "it is not enough for a defendant's in-state activities to have been the but-for cause of a plaintiff's injury."  Rodriguez, 827 F. Supp. 2d at 51.  Instead, "the First Circuit has adopted a stricter proximate cause standard" which asks whether the defendant's in-state conduct forms an "important, or at least material element of proof in the plaintiff's case" such that "the litigation is founded directly on those activities."  Id. (quotations and citations omitted).  The contract, formed in Massachusetts, forms the basis of the duty of care ITPL owed to Plaintiff that is at issue in Plaintiffs' negligence claim and the relationship between Plaintiff and ITPL formed in Massachusetts will, therefore, be an important part of Plaintiffs' negligence claim.

ITPL cites to Weinberg and Rodriguez to bolster its argument that relatedness is unsatisfied here, but the Court finds that these cases are consistent with a finding of relatedness. In Weinberg, the court found relatedness unsatisfied in the case of plaintiffs who purchased hot air balloon tickets from a Massachusetts office of a travel agent and sought to assert personal jurisdiction the tour operators based in Africa.  Weinberg, 891 F. Supp. 2d at 235.  The plaintiffs argued that the Massachusetts contract was the "but for" cause of the ensuing hot air balloon accident because the African tour operators used travel agents and booking agents such as the Massachusetts travel agent used by plaintiffs.  Id. at 245.  The court rejected this attenuated argument and explained that the "relaxed application of the relatedness test . . . has been applied only when a foreign defendant directly targets Massachusetts residents in an ongoing effort to

further a business relationship." Id. at 245.  With no evidence that the African tour operators directly targeted residents of Massachusetts, the court applied the proximate cause test and found that plaintiffs' "advanced reservation agreement with [the Massachusetts travel agent] 'would hardly be an important, or perhaps even material, element of proof in their [negligence] case.'" Id. at 254 (citing Marino v. Hyatt Corp., 793 F.2d 427, 430 (1st Cir. 1986)).

In the present case, in contrast, Plaintiffs seek to assert personal jurisdiction over ITPL, the entity with which she contracted in Massachusetts, not a third-party tour operator with no in-state contacts.  Even assuming *arguendo* that ITPL did not "directly target Massachusetts residents" and accordingly applying the heightened proximate cause test, the Court finds that Plaintiff's in-state contacts with ITPL and Intrepid US form an important part of her negligence and contract claims.  The nexus between Plaintiffs' cause of action and in-state contacts is stronger here than in Weinberg, where the plaintiff had no in-state contacts with the African defendants and argued instead that the African defendants' use of a travel agent – with whom plaintiffs had made an advance reservation – satisfied the relatedness requirement.

Rodriguez is similarly inapposite.  Rodriguez, 827 F. Supp. 2d at 52.  The plaintiff in Rodriguez was an Axcelis-USA employee who traveled to Korea to supervise an installation at a Samsung plant.  The installation was performed by Axcelis-Korea, a separate entity based in Asia.  The only contact Axcelis-Korea had with Massachusetts was entering into a contract with Axcelis-USA to perform the installation.  Plaintiff was injured during the installation and the court noted that but for Axcelis-Korea's contract with Axcelis-USA, the plaintiff would not have been present in Korea where he was injured, but "Axcelis-Korea's limited contacts with Massachusetts are not, as due process requires, an important or material element of proof in plaintiffs' case." Id.  The contract between Axcelis-USA and Axcelis-Korea, to which plaintiff

was not a party, was simply the reason plaintiff happened to be working in Korea where he was injured, but did not otherwise relate to his negligence claim. In the present case, Plaintiff herself had direct contact with ITPL in Massachusetts, through its website and communications with its booking agent, to contract for the travel services that ultimately caused her injury.

(2)     Purposeful Availment

Plaintiffs bear the burden of demonstrating that ITPL purposefully availed itself of "the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Daynard, 290 F.3d at 61 (1st Cir. 2002) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995)). Purposeful availment is an "equally important factor when foreign defendants are involved." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 66 (1st Cir. 2014) (citing J. McIntyre Mach., Ltd. v. Nicastro, __ U.S. __, 131 S.Ct. 2780, 2790–91 (2011) (plurality opinion)).

Courts have looked to the test set forth in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), to assess whether the maintenance of a website by an out-of-state defendant should be considered purposeful availment of doing business in a state where the website is accessed. The Zippo test uses a "sliding scale" of commercial interactivity to evaluate personal jurisdiction on the basis of a defendant's internet activities where "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id. at 1124. At one end of the spectrum, personal jurisdiction is established where a defendant "clearly does business over the Internet," for example by regularly and knowingly entering into contracts with out of state users. Id. (citing Compuserve, Inc. v. Patterson, 89 F.3d 1257 (6th Cir. 1996)). At the

other end of the spectrum are passive websites that do nothing more than share information.  Id. Interactive websites are at the middle of the spectrum, and the "level of interactivity" and the "commercial nature of the exchange of information" on the website govern whether personal jurisdiction is appropriate.  Id.  "Something more" than interactivity is required to support the assertion of personal jurisdiction.  Sportschannel New England Ltd. P'ship v. Fancaster, Inc., No. 09-cv-11884-NG, 2010 WL 3895177, at *5 (D. Mass. Oct. 1, 2010).  Courts consider the "extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website" in assessing personal jurisdiction.  Cossaboon, 600 F.3d at 35.

In Cossaboon, the First Circuit addressed whether an interactive website fulfilled the requirement of purposeful availment for general jurisdiction.  Id. at 35-36.  The First Circuit held that it lacked general jurisdiction in New Hampshire over the defendant based only upon its interactive website and noted that it considered significant the fact that the website was available to anyone with Internet access, did not target forum New Hampshire residents in particular and any advertising on it was no more likely to solicit business in New Hampshire than elsewhere. Id. at 35.  The court also emphasized that although the website was interactive, it primarily discussed services provided at the defendant's facility in Maine.  Id.

In Media3 Technologies, LLC v. CableSouth Media III, LLC, 17 F. Supp. 3d 107 (D. Mass. 2014), the district court applied Cossaboon in the context of specific jurisdiction.  In Media3, a Massachusetts company sought to assert personal jurisdiction over an alleged infringer of its trademark who was based in Tennessee and maintained a website to market services in Louisiana, Arkansas and Mississippi.  Id. at 109.  The court noted that, like the website found insufficient on its own to support general jurisdiction in Cossaboon, "the website describing

defendant's services is also available to anyone with Internet access, does not target Massachusetts residents in general, and contains generic advertising that is no more likely to solicit customers in Massachusetts than anywhere else." Id. at 112. The court noted that the website was "designed and intended to target customers and facilitate defendant's services in Louisiana, Arkansas, and Mississippi," and the defendant offered no services in Massachusetts and was otherwise unrelated to the forum. Id.

ITPL purposefully availed itself of the privilege of conducting business in Massachusetts by soliciting and transacting business with Plaintiff, a Massachusetts resident, through its website and by offering tour services in Massachusetts. Plaintiff designed her trip and input her Massachusetts address and use of United States currency on ITPL's website. The fact that the completion of the transaction took place over the telephone with ITPL's booking agent as opposed to through the website itself is not dispositive: based on Plaintiff's entries on the website, the website prompted her to contact ITPL's booking agent by telephone to pay for the trip. D. 1-1 ¶ 36. ITPL thus "has actually and purposefully conducted commercial or other transactions with forum state residents through its website." Cossaboon, 600 F.3d at 35. After Plaintiff booked her trip, ITPL sent her an email via Intrepid US confirming her purchase and providing a summary of the travel itinerary. D. 1-1 ¶ 41. Furthermore, this case is unlike Cossaboon and Media3, where the courts emphasized that the websites in question promoted only services to be provided outside of the forum state. ITPL, in contrast, operates over ten tours that feature destinations or tour stops in Massachusetts. D. 1-1 ¶ 18. ITPL's contacts with Massachusetts reflect an affirmative intention to solicit business in Massachusetts and are not "random, isolated, or fortuitous." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984).

(3)      Reasonableness

Whether the exercise of jurisdiction is reasonable is answered by considering the "gestalt" factors, which include ITPL's "burden of appearing, the forum state's interest in adjudicating the dispute, [Plaintiffs'] interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficient resolution of the matter, and the common interests of all states in promoting substantive social policies." Bluetarp Fin., Inc. v. Matrix Const. Co., 709 F.3d 72, 83 (1st Cir. 2013) (citations omitted).

First, ITPL argues that it would be unreasonably burdened by being required to travel to Massachusetts to defend itself, "particularly since ITPL has 'no ongoing connection to Massachusetts.'" D. 13 at 11 (quoting Phillips, 530 F.3d at 30). ITPL runs over ten tours through Massachusetts, D. 1-1 ¶ 18, but has no other institutional presence in the state. While the need to defend against a lawsuit in a foreign jurisdiction "is almost always inconvenient and/or costly . . . this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). ITPL has not identified any special or unusual burden of litigating this case in Massachusetts. Next, Massachusetts has "a strong interest in protecting the rights of American citizens from negligence that occurs outside our borders." Weinberg, 891 F. Supp. 2d at 247. That interest, however, is diminished where the injury occurs outside of Massachusetts. Rodriguez, 827 F. Supp. 2d at 52. Third, Plaintiff, "a resident of the state, has an interest in bringing this action in Massachusetts, which weighs in favor of a finding of personal jurisdiction." Adelson v. Hananel, 510 F.3d 43, 51 (1st Cir. 2007). Fourth, the judicial system's interest in convenient and effective relief weigh in favor of ITPL, as the accident occurred in South Africa. Finally, "there are the common interests of all sovereigns involved in promoting substantive social policies." Nowak v.

Tak How Inv. Ltd., 899 F. Supp. 25, 34 (D. Mass. 1995).  Massachusetts' social policy of protecting its citizens and South Africa's policy in protecting visitors and promoting its businesses render this factor "essentially neutral."  Id.  Overall, "[t]o the limited extent that the gestalt factors are meaningful," C.W. Downer, 771 F.3d at 71, they weigh in favor of jurisdiction in this case.  The Court, therefore, concludes that it has specific jurisdiction over ITPL.

      2.     *Intrepid US*

      a)     General Jurisdiction

As the combined Massachusetts contacts of ITPL and Intrepid US are insufficient to satisfy the due process requirements of general personal jurisdiction, Intrepid US's in-state contacts alone are also insufficient.

      b)     Specific Jurisdiction

The Court must next consider whether Intrepid US's in-state contacts satisfy the three components of the specific jurisdiction inquiry.  Harlow, 432 F.3d at 61.  A court must make "an affirmative finding on each of the three elements of the test" to support a finding of specific jurisdiction.  Phillips Exeter Acad., 196 F.3d at 288.  "Accordingly, if the Court finds one of the elements lacking, it need not examine the others."  Rodriguez, 827 F. at 51.

The Court need look only as far as the purposeful availment requirement to conclude that Intrepid US's limited contacts with Massachusetts fall short of satisfying the test for specific jurisdiction.  The "cornerstones" of the purposeful availment inquiry are voluntariness and foreseeability.  C.W. Downer, 771 F.3d at 66 (citing Daynard, 290 F.3d at 61).  The purpose of the inquiry is to prevent jurisdiction based on "random, fortuitous, or attenuated contacts." Burger King Corp., 471 U.S. at 475.

The only jurisdictional contacts alleged by Plaintiffs specifically as to Intrepid US are that Intrepid US processed Plaintiff's payment for the trip over the telephone and then sent her a confirmation email from ITPL.  Plaintiffs argue that Intrepid US's willingness to accept payment from a Massachusetts resident for a trip makes it foreseeable that Intrepid US would be haled into court in Massachusetts if something went wrong during the trip.  D. 25 at 11.  Such an expansive view of the purposeful availment requirement does not comport with due process. The fact that Intrepid US knew that Plaintiff was a Massachusetts resident when it accepted her payment and sent her a confirmation email is insufficient to establish specific jurisdiction, as a "defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant."  Phillips, 530 F.3d at 28 (concluding that "[i]t stretches too far to say that Prairie Eye, by mailing a contract with full terms to Massachusetts for signature and following up with three e-mails concerning the logistics of signing the contract, should have known that it was rendering itself liable to suit in Massachusetts," id. at 29). Furthermore, Intrepid US has no property or employees in Massachusetts and it does not target the Massachusetts market through its national advertising.  D. 15-1 at 3.  Plaintiffs have not alleged that Intrepid US operates the ITPL website through which Plaintiff selected her trip. Voluntariness "requires that the defendant's contacts with the forum state proximately result from actions by the defendant himself," Rodriguez, 827 F. Supp. 2d at 52, and Plaintiffs' allegations of Intrepid US's affirmative contacts with Massachusetts are insufficient to confer specific jurisdiction over Intrepid US.

The cases cited by Plaintiffs are consistent with this conclusion.  In Tatro v. Manor Care, Inc., 416 Mass. 763 (1994), a California hotel was held to have "transacted business" in Massachusetts because it actively "solicited and obtained meeting and convention business from

at least ten Massachusetts businesses, and maintained telephone and mail contact with them." Id. at 768.  The hotel offered promotions if the businesses reserved blocks of rooms.  Id. at 765. When a plaintiff was injured in a hotel room that had been booked as a result of these promotions, the court found that jurisdiction was present due to "purposeful" and "successful" solicitation by the hotel.  Id. at 767.  Similarly, in Saturn Mgmt. LLC v. GEM-Atreus Advisors, LLC, 754 F. Supp. 2d 272 (D. Mass. 2010), the court emphasized the numerous contacts with Massachusetts given that the contract at issue was drafted in Massachusetts, and that "hundreds of emails" were sent to Massachusetts "before and after the signing of the agreements."  Id. at 278.  In the present case, Plaintiff initiated and pursued the booking of her trip without any alleged affirmative solicitation or communication from Intrepid US.  The jurisdictional allegations here as to Intrepid US are easily distinguished from the allegations in Tatro and Saturn, where defendants directly contacted specific Massachusetts residents and businesses to build and maintain contractual relationships.

      *3.*    *Peak*

      a)    Jurisdictional Allegations

Plaintiffs allege that Peak, an Australian corporation based in Melbourne, maintained interlocking directorates with ITPL, D. 1-1 ¶ 15, and "exercised complete control" over ITPL's finances and policies, id. ¶ 47, such that Peak is subject to personal jurisdiction as ITPL's alter ego.  Courts generally "have presumed the institutional independence of parent and subsidiary when determining whether jurisdiction may be asserted over the parent solely on the basis of the subsidiary's contacts with the forum."  Donatelli, 893 F.2d at 465-466.  In cases where that presumption is overcome, there is "invariably a 'plus' factor, such as an unusual degree control or an obvious agency relationship.  Id.

Despite Peak's ownership of ITPL, the record reflects that the two entities maintain separate bank accounts, prepare separate financial statements and maintain separate corporate records. D. 17-1 ¶ 10. Plaintiffs' counterargument, that the "interlocking directories" of the two entities warrant the extension of personal jurisdiction, cannot overcome the presumption of corporate separateness. Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980) (noting that the presumption of corporate separateness "must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary"). The First Circuit has expressly held that "allegations of interlocking directorates and stock ownership will not alone suffice." Id. Plaintiffs have not provided sufficient evidence upon which the Court could plausibly find Peak liable as ITPL's alter ego.

b)      General Jurisdiction

Peak does not have the "continuous and systematic" contacts with Massachusetts required for the exercise of general jurisdiction. Glater, 744 F.2d at 216. Indeed, the allegations of the complaint and the affidavit of Peak's Chief Executive Officer, D. 17-1, establish that Peak has no contacts whatsoever with Massachusetts, except those through its subsidiaries. Peak has never registered to transact business in Massachusetts or maintained a mailing address or telephone number in Massachusetts. Id. ¶ 4. Peak has never owned or leased any property in Massachusetts, maintained banking or financial accounts in Massachusetts or paid taxes in Massachusetts. Id. ¶ 5. Peak has never had employees who lived or worked in Massachusetts. Id. ¶ 6. Peak does not advertise in periodicals or media specifically directed at residents of Massachusetts. Id. ¶ 7. There is no basis for asserting general jurisdiction over Peak.[1]

---

[1]      The Court also denies the request for jurisdictional discovery as to Peak. Plaintiffs have failed to make a colorable claim of general personal jurisdiction. Am. Med. Sys., Inc., 604 F. Supp. 2d at 330.

c)      Specific Jurisdiction

Plaintiffs cannot satisfy the requirements of specific jurisdiction as to Peak.  There are no direct contacts between Plaintiff and Peak and no allegations that Peak itself had any activity at all in Massachusetts.  Without allegations of in-state conduct, Plaintiffs cannot satisfy the relatedness requirement, which requires that "the defendant's in-state conduct formed an important, or at least material, element of proof in the plaintiff's case." Harlow, 432 F.3d at 61. "Plaintiffs' failure to demonstrate relatedness obviates the Court's need to weigh purposeful availment or reasonableness." Rodriguez, 827 F. Supp. 2d at 52

The Court finds that it has personal jurisdiction over only ITPL and, accordingly, dismisses all claims against Intrepid US and Peak.  The Court will next consider ITPL's remaining arguments for dismissal under Rule 12(b)(6).

**B.      Forum-Selection Clause**

ITPL argues that the forum-selection clause in the trip Booking Conditions mandates dismissal of this case.  The contract provides that the laws of Victoria, Australia govern the booking conditions "to the fullest extent allowable" and "[a]ny disputes in connection with a trip or these Booking Conditions must be initiated in the courts of Victoria, Australia." D. 1-1 at 34. The forum-selection clause expressly makes the courts of Victoria the exclusive forum for disputes arising under the contract, so if the clause is enforceable, the complaint must be dismissed.  See Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 389 (1st Cir. 2001) (noting that the word "must" in forum-selection clause "expresses the parties' intention to make the courts of Illinois the exclusive forum for disputes arising under the contract") (citation omitted).

Forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." The

Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 10 (1972).  Such clauses are enforced unless the objecting party can show:

> (1) the clause was the product of "fraud or overreaching,"
>
> (2) "enforcement would be unreasonable and unjust,"
>
> (3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court," or
>
> (4) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."

Id. at 15, 18.

The facts here parallel those in Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991). In Carnival, a couple from Washington State bought tickets from a Florida-based cruise line to take a cruise from California to Mexico.  After they purchased the tickets, the couple received a contract with the terms and conditions of their cruise, including a forum-selection clause that required any dispute related to the trip to be litigated in Florida.  Id. at 587-88.  The wife was injured while the boat was in international waters off the coast of Mexico and the couple filed suit against the cruise line for negligence in Washington.  Id. at 588.  The Ninth Circuit held that the forum-selection clause was unenforceable under The Bremen because it was not "freely bargained for" and plaintiffs were physically and financially unable to pursue the litigation in Florida.  Shute v. Carnival Cruise Lines, Inc., 897 F.2d 377, 385-386 (9th Cir. 1990).

The Supreme Court reversed, holding that the forum-selection clause was enforceable. Carnival, 499 U.S. 585.  In consideration of the "realities of form passage contracts," the Court held that "a reasonable forum clause in a form contract of this kind well may be permissible for several reasons," including the cruise line's interest in limiting the fora where it could face suit, the parties' shared interest ex ante in dispelling confusion as to the proper forum for suit and the

plaintiffs' interest in receiving reduced fares that reflect the savings to the cruise line from limiting fora where it may be sued.  Id. at 593-94.  The Court also considered the "fundamental fairness" of the contract and concluded there was no evidence that the forum-selection clause was inserted by the cruise line in bad faith to discourage legitimate claims.  Id. at 595.  The Court emphasized that the cruise ticketing contract was provided in advance to plaintiffs so as to yield sufficient opportunity to "reject[ ] the contract with impunity."  Id.

Like the plaintiffs in Carnival, Plaintiff argues that the forum-selection clause is a contract of adhesion and therefore enforcement against her would be unfair.  She argues that her silence upon receipt of the Booking Conditions should not be construed as affirmative acceptance, particularly in light of the "tremendous disparity of bargaining power" between Plaintiff and ITPL.  D. 24 at 16.  This argument was considered in Carnival, where the Court expressly rejected the position that a "nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining."  Id. at 593; see Rivera, 575 F.3d at 19 (noting that "[t]he mere fact that a contract is one of adhesion does not render it per se unenforceable"); Doe v. Seacamp Ass'n, Inc., 276 F. Supp. 2d 222, 226 (D. Mass. 2003) (holding that "neither lack of commercial sophistication nor the use of boilerplate or form contracts will render a forum selection clause automatically unenforceable").  The Supreme Court in Carnival concluded that "[c]ommon sense dictates that a ticket of this kind will be a form contract the terms of which are not subject to negotiation, and that an individual purchasing the ticket will not have bargaining parity with the cruise line."  Id. at 593.  Similarly, one would not expect a traveler like Plaintiff to bargain over terms with a tour operator like ITPL.  The reasons set forth in Carnival for permitting enforcement of a nonnegotiated contract in the cruise industry apply with equal force here:  (1) as an international tour operator, ITPL arranges travel

for travelers from many places, so an incident on a trip risks subjecting ITPL to the expense of defending against suits in many different fora; (2) the forum-selection clause provides ITPL and Plaintiff certainty as to where to file suit; and (3) travelers like Plaintiff benefit from the reduced fares ITPL offers by saving money by limiting the fora where it may be sued. See id. at 593-94.

Furthermore, like in Carnival, the two parties are not from the same jurisdiction and the accident giving rise to the claims occurred internationally in a third location. Plaintiff is from Massachusetts, ITPL is based in Australia and the accident took place in South Africa. In Carnival, the plaintiffs were from Washington, the cruise line was based in Florida and the accident took place in international waters near Mexico. Just as Florida was not rejected as a "remote alien forum" in Carnival because it was the home of one of the parties, id. at 594, Australia has a connection to this dispute because it is the home of ITPL. D. 1-1 ¶¶ 7-9. The Supreme Court in Carnival weighed the fact that the accident occurred far from the parties' homes in favor of enforcing the forum-selection clause since this was not "an essentially local [dispute] more suited to resolution in the State of Washington than in Florida." Carnival, 499 U.S. at 594. In the present case, the accident also occurred internationally in a place where neither party was based and this is not a local dispute better suited to resolution in Massachusetts than Australia.

Plaintiff cites Casavant v. Norwegian Cruise Line, Ltd., 63 Mass. App. Ct. 785, 798 (2005), but that case is distinguishable. D. 24 at 15. In Casavant, the plaintiffs were passengers on a cruise ship whose contract governing their booking contained a forum-selection clause. Plaintiffs were provided with a copy of the contractual terms a year after their original booking, two months after full payment and approximately thirteen days before their cruise was scheduled to depart. Id. at 787. Shortly after receiving the contract, plaintiffs told the cruise line they were

unwilling to proceed with the cruise and sought to reschedule their trip.  In seeking to enforce the forum-selection clause in that case, the defendant cruise line argued that the plaintiffs should be presumed to have accepted the forum-selection clause "because of [their] initial silence upon receipt of the ticketing contract." Id. at 798.  The court disagreed, as plaintiffs had repeatedly repudiated the contract upon receipt.  Furthermore, plaintiffs did not receive the contract containing the forum-selection clause until just a few weeks before their scheduled departure, and the court distinguished this case from those that "involve passengers who received their tickets prior to the scheduled cruise and, notwithstanding reasonable opportunity to reject the contract, embarked on the cruise, thereby taking the contractual benefit." Id. at 798 n.17.  Here, the Booking Conditions were emailed to Plaintiff promptly after her purchase and over three months before her trip, affording her a reasonable opportunity to reject the contract and cancel her plans.  D. 1-1 ¶¶ 41, 51.  Plaintiff nonetheless chose to embark on her trip, thereby accepting the benefit of her contract with ITPL.

Plaintiff also argues that it would be unreasonable for her to have to prosecute her claims in Australia due to her weakened physical and financial condition.  D. 24 at 16.  The Supreme Court stated in The Bremen that "the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause."  407 U.S. at 17.  However, the Court in Carnival noted that that statement was made in the context of a hypothetical agreement "between two Americans to resolve their essentially local disputes in a remote alien form" and reaffirmed that a plaintiff seeking to set aside a forum-selection clause for inconvenience faces a "heavy burden of proof." Carnival, 499 U.S. at 594 (citing The Bremen, 407 U.S. at 17).  The First Circuit has explained that "something considerably more than the mere inconvenience of traveling to litigate in a different, even

faraway foreign jurisdiction, is required to overcome a contractual agreement to do so." In re Mercurio, 402 F.3d 62, 66 (1st Cir. 2005). A plaintiff is required to demonstrate "practical impossibility" to meet this heavy burden, Huffington v. T.C. Grp., LLC, 637 F.3d 18, 24 (1st Cir. 2011) and this showing has not been made here. The Court, therefore, concludes that the forum-selection clause is enforceable and need not reach ITPL's alternative arguments for dismissal.

## VI.    Conclusion

For the foregoing reasons, the Court **ALLOWS** Intrepid US and Peak's motions to dismiss for lack of personal jurisdiction, D. 14, D. 16, and **ALLOWS** ITPL's motion to dismiss for failure to state a claim upon which relief can be granted, D. 12.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge